UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MARDELLE D. JERDE,                         CIV. NO. 13-1552(MJD/JSM)

     Plaintiff,                              REPORT AND RECOMMENDATION

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION, et.al.

     Defendants.

     The above matter came before the undersigned on Defendants' Motion to Dismiss [Docket No. 7].  William B. Butler, Esq. appeared on plaintiff's behalf.  Phillip J. Ashfield, Esq. appeared on defendants' behalf This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. §636(b)(1)(A), (B) and Local Rule 72.1(c) and the Amended Administrative Order issued by Chief Judge Michael J. Davis on October 11, 2013 [Docket No. 17].

     Plaintiff seeks to invalidate the foreclosure of the mortgage on her home. Plaintiff asserts four claims against defendants: (1) quiet-title, to determine adverse claims under Minn. Stat. § 559.01; (2) declaratory judgment; (3) slander of title; and (4) forcible eviction.  For the reasons below, the Court recommends that defendants' Motions to Dismiss be granted and plaintiff's claims be dismissed with prejudice.[1]

---

[1]     In the caption of the Complaint, plaintiff also purports to sue "all other persons unknown claiming any right, title, estate, interest, or lien in the real estate described in the complaint herein."  As "[t]here are no factual allegations sufficient to identify these unnamed defendants or state a claim against them;" the Court therefore recommends that all claims against them be dismissed.  See Sonsalla v. Mortg. Elec. Registration Sys., Inc., Civ. No. 13-659, 2013 WL 4052825, *1 (D. Minn. Aug. 9, 2013) (citing Estate

I.      **BACKGROUND**

Plaintiff sued defendants Federal National Mortgage Association ("Fannie Mae"),

Mortgage Electronic Registration Systems, Inc. ("MERS") and MERSCORP Holdings,

Inc. (collectively "defendants") in state district court on or about June 4, 2013.  Notice of

Removal, p. 1 [Docket No. 1].  Defendants removed the matter to Federal District Court

on June 24, 2013.  Id.

The facts bearing on the motion to dismiss are as follows: Plaintiff acquired her

interest in property in Rush City, Minnesota ("Property") on September 21, 1995 by

Warranty Deed.   Complaint, ¶¶1, 2, [Docket No. 1-1].   On March 12, 2007, plaintiff

executed a note payable to Homestead Mortgage Corporation and a mortgage in favor

of  MERS.    Id., ¶6; Ex. 1 (Mortgage).    Plaintiff claimed that Homestead Mortgage

originated the loan for delivery to Fannie Mae shortly after execution of the mortgage,

and thus, Fannie Mae, and not JP Morgan Chase ("Chase"), is the holder of the loan

and real party in interest.   Id., ¶11, Ex. 2 (screen shot dated May 28, 2013, listing the

name "Jerde," Chase as the "Servicer," and Fannie Mae as the "Investor").[2]

Plaintiff claims that no defendant or predecessor has the right to declare a default

on the note, no defendant or predecessor can prove a default of the note under the

UCC, and plaintiff never borrowed any money from any defendant and has not

defaulted on any obligation to any defendant.   Id., ¶¶7, 8.

---

of Rosenberg ex rel. Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir.1995) (affirming
dismissal of unidentified defendants about whom no factual allegations were made)).

[2]      Plaintiff alleged that this document is a "MERS Servicer ID."  Complaint, ¶11.

Fannie Mae has a process by which a seller or servicer delivers a security interest to Fannie Mae. Id., ¶12. This process is set out in Fannie Mae's Custodial Agreement, and requires a lender to deliver to the custodian an executed assignment of the mortgage to Fannie Mae in recordable form but not recorded, or an executed power of attorney to Fannie Mae to assign the mortgage, among other documents. Id., Ex. 3 (excerpt from blank Custodial Agreement attached to Trust Indenture for Fannie Mae).

Fannie Mae also has a Seller Guide, which requires a servicer assigning a MERS-registered loan to Fannie Mae, to execute an assignment of the mortgage to Fannie Mae. Id., ¶¶15, 16, Ex. 4 (purported excerpt from Seller Guide dated October 30, 2009). According to plaintiff, MERS, Fannie Mae's predecessor in interest, prepared and delivered an assignment of mortgage assigning plaintiff's mortgage to Fannie Mae, which purported to give the power of sale to Fannie Mae. Id., ¶17.

Fannie Mae acquired its interest in plaintiff's mortgage before foreclosure of the Property, but no assignment from MERS to Fannie Mae appears in the records of the Chisago County Recorder. Id., ¶¶13, 18.

On December 2, 2008, an Assignment of Mortgage from MERS to Chase was executed by MERS Assistant Vice President Patricia Miner. Id., ¶20, Ex. 5 (Assignment of Mortgage). The Assignment of Mortgage was recorded on December 12, 2008, in the Chisago County Office of the Recorder. Id. Plaintiff alleged that Miner lacked authority to sign the Assignment of Mortgage because she was an employee of Chase and there is no evidence in the record of Miner's authority to execute the foreclosure documents on behalf of MERS. Id., ¶24, Ex. 7 (Power of Attorney dated December 17, 2008).

3

Chase initiated foreclosure proceedings, despite having knowledge of an unrecorded assignment of mortgage to Fannie Mae and despite the fact that Fannie Mae holds the power of sale, and not Chase. Id., ¶¶13, 19. On December 12, 2008, a Notice of Pendency empowering the law firm of Shapiro & Zielke to foreclose on the Property on behalf of Chase was recorded. Id., ¶26, Ex. 6 (Notice of Pendency). On December 17, 2008, Miner, on behalf of Chase, signed a Power of Attorney effective December 11, 2008, authorizing Shapiro & Zielke to foreclose. Id., ¶27, Ex. 7 (Power of Attorney). The Power of Attorney was recorded on December 31, 2008. Id. Plaintiff alleged the Power of Attorney was invalid because Shapiro & Zielke was only authorized to act on behalf of Chase, not Fannie Mae, the real party in interest. Id., ¶28. Additionally, plaintiff claimed that subsequent Notices of Pendency recorded by Shapiro & Zielke on behalf of Chase were invalid because the firm was authorized only to act on behalf of Chase, and was not authorized to act on Fannie Mae's behalf, the real party in interest . Id., ¶¶30-35, Exs. 8, 9, 10 (Notices of Pendency dated April 1, 2010, June 11, 2010, January 5, 2011).

On January 5, 2011, Chase, through Shapiro & Zielke, noticed the sheriff's sale of the Property, publication of the sale commenced on January 12, 2011, and the sale took place on February 23, 2011. Id., ¶36, Ex. 11 (Sheriff's Certificate of Foreclosure Sale and Foreclosure Record). Chase bid in $204,271.61 on the debt allegedly owed to Chase. Id.. Plaintiff claimed that before the sheriff's sale, Chase transferred its power of sale to Fannie Mae through an unrecorded assignment, and, therefore, lacked the legal authority to bid in the debt at the Sheriff's sale or to exercise the power of sale in the mortgage, because Fannie Mae held that power. Id., ¶37.

4

On June 3, 2011, Sheri Brandenhoff, a Chase Vice President, signed an Assignment of Sheriff's Certificate of Sale, which conveyed the property from Chase to Fannie Mae.  Id., ¶38, Ex. 12 (Assignment of Sheriff's Certificate of Sale).   This Assignment was recorded on June 10, 2011.  Id.  Plaintiff alleged that Brandenhoff lacked signing authority because Fannie Mae was the real party in interest, therefore Chase "lacked standing" to assign to Fannie Mae.  Id., ¶39.

Plaintiff alleged that on or about April 13, 2011, Shapiro & Zielke received constructive notice via an Order and Consent Decree between Chase and the Office of the Comptroller of Currency that Chase had engaged in "unsafe and unsound" banking practices in conducting foreclosures.  Id., ¶¶40, 41.  In addition, plaintiff claimed that Chase and Fannie Mae knew or had reason to know that the December 2, 2008 Assignment of Mortgage, all of the Notices of Pendency, and the June 3, 2011 Assignment of Sheriff's Certificate of Sale, conveying the Property from Chase to Fannie Mae, violated Minn. Stat. §580.  Id., ¶45.

On April 10, 2012, Shapiro & Zielke, on Fannie Mae's behalf, commenced an eviction proceeding while knowing of all of the alleged defects in the foreclosure.  Id., ¶¶48, 49, Ex. 14 (eviction Summons and Complaint).

Plaintiff pled the following causes of action:

In Count I, Determination of Adverse Claims, Minn. Stat. § 559.01, plaintiff asserted a quiet title action seeking a determination regarding defendants' adverse interests in the Property.  Plaintiff alleged that she is personally in possession of the property and defendants' interest in the property was void because there are unrecorded assignments, Chase did not have the power of sale on the date of the

sheriff's sale, and the foreclosure was void because the individuals signing the foreclosure documents lacked the legal authority to execute the documents and defendants did not record the necessary powers of attorney authorizing foreclosure.  Id., ¶¶55-57.  In addition, plaintiff alleged that in a quiet title action, defendants have the burden of proving their interest in the Property by a preponderance of evidence.  Id., ¶¶54, 56.

Count II sought a declaratory judgment pursuant to Minn. Stat. §555.01 et. seq. that (1) the December 2, 2008 Assignment of Mortgage from MERS to Chase was void; (2) the four recorded Notices of Pendency were void; (3) the June 3, 2011 Assignment of Sheriff's Certificate of Sale was void; and (4) plaintiff remained fee owner of the Property.

Count III alleged slander of title based on Chase's recording of documents that were false and not executed by legally authorized persons, and that defendants knew or should have known that the documents were false.  Id., ¶¶63-66.

Count IV alleged forcible eviction under Minn. Stat. §577.08, claiming that plaintiff was forcibly evicted from the Property without legal authority.  Id., ¶¶68, 69.

As relief, plaintiff sought a determination of the alleged adverse interests in the property; a declaratory judgment that the mortgage, the Sheriff's Certificate of Sale, the December 2, 2008 Assignment of Mortgage, the four Notices of Pendency, and the June 3, 2011 Assignment of Sheriff's Certificate are void; an order that plaintiff is the fee owner of the property; and damages.  Complaint, Prayer for Relief, ¶¶I, II, III.

Defendants moved to dismiss the Complaint, arguing that the Complaint failed to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and that the Complaint was barred by

6

the doctrine of <u>res judicata</u> because plaintiff had already litigated the same claims against all of the same parties in <u>Jerde v. JP Morgan Chase, N.A.</u>, Civ. No. 11-2666 (PAM/JSM), 2012 WL 206271 (D. Minn. Jan. 24, 2012), <u>aff'd</u>, 502 Fed. Appx. 616 (8th Cir. 2013).  Defendants' Memorandum in Support of Motion to Dismiss Complaint ("Def. Mem.") [Docket No. 9].  For the reasons set forth below, the Court concludes that plaintiff fails to state a claim for relief and therefore, defendants' motion to dismiss should be granted.[3]

## II.   LEGAL STANDARDS

In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaints must be taken as true.  <u>Ashley County, Ark. v. Pfizer, Inc.</u>, 552 F.3d 659, 665 (8th Cir. 2009).  In addition, a court must afford the plaintiff all reasonable inferences from those allegations.  <u>Blankenship v. USA Truck, Inc.</u>, 601 F.3d 852, 853 (8th Cir. 2010).  At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated by the United States Supreme Court in

---

[3]     As this Court has determined that plaintiff's underlying claims fail on the merits, it need not decide whether her claims are barred by <u>res judicata</u>.  <u>See</u> <u>Simmer v. HSBC Bank USA, N.A.</u>, Civ. No. 13-1549(DSD/AJB), 2013 WL 6244710, at *3 (D. Minn. Dec. 3, 2013) (declining to reach a determination on <u>res judicata</u> or estoppel because the underlying claims fail on the merits); <u>Schumacher v. Federal Home Loan Mortg. Corp.</u>, Civ. No. 13-29 (DSD/FLN), 2013 WL 3033746, at *2 (D. Minn. June 17, 2013) (stating "defendants argue that this action is barred by res judicata. . .and that this lawsuit is nothing more than a brazen attempt to relitigate Schumacher's claim.  The court need not reach the res judicata determination, however, as the underlying claims. . .fail on the merits.).  However, as the court determined in <u>Welk v. Federal Nat'l Mortg. Ass'n</u>, on facts and arguments virtually identical to those presented in the instant case, there is no question that plaintiff's suit is barred based on the doctrine of <u>res judicata</u>.  Civ. No. 12-2864 (SRN/TNL), 2013 WL 2155463, at *4-5 (D. Minn., May 17, 2013).

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) and <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007).

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than a unadorned, the-defendant-unlawfully-harmed-me-accusation." <u>Iqbal</u>, 556 U.S. at 678 (internal quotation marks and citations omitted). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 555). Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S., at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> at 677 (quoting <u>Twombly</u>, 550 U.S. at 556). "[T]he plausibility standard, which requires a federal court complaint to 'state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Ritchie v. St. Louis Jewish Light</u>, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted). "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at 679.

As a general rule, the Court may not consider materials "outside the pleadings" on a motion to dismiss, without converting the motion to dismiss to a motion for summary judgment. Fed. R. Civ. P. 12(d). "The court, however, 'may consider some

materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings,'" without converting the motion into one for summary judgment.  See Little Gem Life Sciences, LLC v. Orphan Medical, Inc., 537 F.3d 913, 916 (8th Cir. 2008) (quoting Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (internal citation and punctuation omitted)); see also Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n. 4 (8th Cir. 2003).

## III.   ANALYSIS

### A.   Quiet Title

Minnesota's quiet title statutes provides that "[a]ny person in possession of real property. . . may bring an action against another who claims an estate or interest therein, or a lien thereon, adverse to the person bringing the action, for the purpose of determining such adverse claim and the rights of the parties respectively.  Minn. Stat. §559.01.

Plaintiff asserted that it is defendants' burden to prove title to the property. Complaint, ¶54; Plaintiff's Memorandum in Opposition to Motion to Dismiss ("Pl. Opp. Mem."), pp. 16-20 [Docket No. 13].   However, mere allegations of a defendant's possession of the property and conclusory statements that the defendant's adverse claims are invalid are insufficient to state a claim for relief.  Karnatcheva v. JP Morgan Chase Bank, NA, 704 F.3d 545, 548 (8th Cir. 2013) (affirming the district court's dismissal of the plaintiff's quiet title claim "because the plaintiff's pleadings, on their face, have not provided anything to support their claim that the defendants' adverse

claims are invalid, other than labels and conclusions, based on speculation that transfers affecting payees and assignments of the notes were invalid."); see also Yang Mee Thao-Xiong v. American Mortg. Corp., Civil No. 13-354 (MJD/TNL), 2013 WL 3788799, at *4 (D. Minn. July 18, 2013) (quoting Novak v. JP Morgan Chase Bank, N.A., Civ. No. 12-589 (DSD/LIB), 2012 WL 3638513, at *4 (D. Minn. Aug. 23, 2012), aff'd, 518 F. App'x 498 (8th Cir. 2013)) (finding that plaintiffs "'must state facts sufficient to allow the court to draw the reasonable inference that . . . she is in possession and that a defendant claims a right or title to the property, but has no such right or title.'").

In addition, the Eighth Circuit in Karnatcheva rejected the "burden of proof" argument advocated by plaintiff. Id. at 548.  As the court explained in Gharwal:

> Karnatcheva rejected that [burden of proof] argument, specifically holding that § 559.01 and the other authority on which [plaintiff] relies 'are not state substantive standards that govern the success of a quiet title claim.' Karnatcheva, 704 F.3d at 548.  Whether or not the Eighth Circuit's holding was "error" is not for this Court to decide; Karnatcheva is binding precedent, and this Court must apply it.  The Court notes, however, that although he was addressing a different issue, plaintiff's counsel himself[4] has conceded in the past "that, under Fed. R. Civ. P. 11, a quiet-title claim must be supported by an objectively reasonable basis for believing that the defendant's asserted interest in the property is invalid." Welk v GMAC Mortg., LLC, 850 F.Supp.2d 976, 988 (D. Minn. 2012), aff'd, 720 F.3d 736 (8th Cir. 2013). Here, plaintiffs quiet title claims are based only on conclusory statements and speculation, but no facts.  The claim fails under Rule 12(b)(6).

Gharwal v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-685 (PJS/JSM), 2013 WL 4838904, at *3 (D. Minn. Sept. 11, 2013).

---

[4]     Both Gharwal and Karnatcheva were represented by William Butler, plaintiff's counsel in the instant case.

In the instant case, plaintiff made wholly unsupported statements about an unrecorded assignment to Fannie Mae before the foreclosure sale and the alleged lack of legal authority by the individuals signing the foreclosure documents.   Complaint, ¶¶13, 18, 19, 24, 28, 30, 32, 34, 37.   The Eighth Circuit and cases within this District have unequivocally held that such conclusory allegations without factual support, are insufficient to satisfy the Rule 8 pleading standards or the standards articulated in Iqbal and Twombly.   See e.g. Karnatvcheva, 704 F.3d at 548; Sorem v. Bank of New York Mellon, Civ. No. 13-290 (DWF/JSM), 2013 WL 4611115, *2-3 (D. Minn. Aug. 29, 2013); Ko v. Mortgage Elec. Registration Sys., Civ. No. 13-596 (JRT/AJB), 2013 WL 4052680, at *2 (D. Minn. Aug. 9, 2013); Quale v. Aurora Loan Services, LLC, Civ. No. 13-621 (JNE/AJB), 2013 WL 3166584, *1 (D. Minn. June 20, 2013) (string citation omitted); Lara v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-676 (SRN/AJB), 2013 WL 3088728, at *3 (D. Minn. June 18, 2013); Schumacher v. Federal Home Loan Mortg. Corp., Civil No. 13-29 (DSD/FLN), 2013 WL 3033746, at *2 (D. Minn. June 17, 2013).

Here, the documents referenced in and attached to the Complaint show an unbroken chain of title from MERS to Chase (pre-foreclosure) and from Chase to Fannie Mae (post-foreclosure).   Complaint, Exs. 1, 5, 12.   The Sheriff's Certificate of Sale is prima facie evidence that Chase (the foreclosing entity) complied with all legal requirements regarding the foreclosure and that the foreclosure and sale were proper. Minn. Stat. §580.19.  Plaintiff stated no facts in her Complaint to rebut this evidence and none of the documents attached to her Complaint support a claim that there was an unrecorded assignment between MERS and Fannie Mae prior to the foreclosure sale.

For example, the screen shot, (Complaint, Ex. 2), listing Fannie Mae as an "investor," was printed on May 28, 2013, over two years after the foreclosure sale and Chase's assignment of the Sheriff's Certificate of Sale to Fannie Mae.  This report does not remotely support plaintiff's theory that there was an unrecorded assignment of the mortgage from Chase to Fannie Mae <u>before</u> the foreclosure.  All the document shows is that as of May 28, 2013, Fannie Mae had acquired its interest in the Property, which is entirely consistent with the Assignment of Mortgage that occurred in June, 2011—<u>after</u> the foreclosure sale.  <u>See</u> <u>Welk</u>, 2013 WL 2155463, at *3 (rejecting the same "evidence"—consisting of a screen shot of the MERS loan information page—and noting "[i]t is no surprise that Fannie Mae is listed as having an interest in October 2012—Fannie Mae acquired an interest from Wells Fargo in March 2011.  There is no plausible allegation that Fannie Mae acquired any interest before 2011").

Similarly, the language from the excerpts from the Fannie Mae Custodial Agreement or Servicer/Seller Guides, (Complaint, Exs. 3, 4), does not cure the deficiencies in plaintiff's pleading, much less support a claim that there was an unrecorded assignment from MERS to Fannie Mae.  The Custodial Agreement is an unexecuted form document that is undated and makes no reference to plaintiff or to plaintiff's mortgage.  <u>Id.</u>, Ex. 3.  The excerpt from the Seller Guide is dated October 30, 2009, which is after the assignment of the mortgage from MERS to Chase occurred. <u>Id.</u>, Ex. 4.  This Court has no basis for assuming that these documents have any application to the mortgage in this case.  Moreover, the language relied upon by plaintiff from the Custodial Agreement and Seller Guide, does not provide a plausible inference that an assignment to Fannie Mae actually occurred prior to the foreclosure.  Contrary

to plaintiff's claims, the Agreement does not require an actual and present assignment from the servicer to Fannie Mae.  It simply requires the servicer to prepare an assignment document that can be recorded when and if the mortgage is assigned to Fannie Mae.  In fact, plaintiff's lawyer has made this exact claim before, quoting the exact same language from Fannie Mae's Seller Guide.  <u>See</u> <u>Richter v. Federal Nat'l Mortg. Ass'n</u>, Civ. No. 13-475 (ADM/JSM), Complaint, ¶18 [Docket No. 1-2].  The district court dismissed the claim with prejudice, stating:

> plaintiffs make a cognitive leap between Integrity originating Plaintiff's loan and Integrity assigning an unrecorded interest in this loan to Fannie Mae.  Plaintiffs have pled no facts indicating this assignment.  Instead, Plaintiffs brush aside this critical gap in logic and focus on Fannie Mae's larger business practices.  Simply quoting a Fannie Mae policy document does not plausibly establish how Fannie Mae obtained an unrecorded interest in the Property in this case. Plaintiffs' allegations do not rise above speculation.

<u>Richter v. Federal Nat'l Mortg. Ass'n</u>, Civ. No. 13-475 (ADM/JSM), 2013 WL 3223377, at *2 (D. Minn. June 25, 2013) (internal citation omitted); <u>see</u> <u>also</u> <u>Cheng Lee v. Federal Nat. Mortg. Ass'n</u>, Civ. No. 13-180 (DWF/SER), 2013 WL 2631904, at *2 n.4 (D. Minn. June 12, 2013) ("The only fact even arguably cited in support of the conclusion that there is an unrecorded assignment is that Fannie Mae's Seller/Servicer Guides require that an assignment of mortgage be executed in favor of Fannie Mae.  This conclusory allegation is insufficient."); <u>Dunbar v. Wells Fargo Bank, N.A.</u>, 853 F. Supp.2d 839, 848 (D. Minn. 2012), <u>aff'd</u>, 709 F.3d 1257 (8th Cir. 2013) ("Plaintiffs appear to argue that an unrecorded assignment from Option One to Wells Fargo must exist that renders invalid the 2010 assignment from Option One to Wells Fargo.  The PSAs do not, however, say that Option One actually assigned the mortgage years ago, only that it had agreed to do

so. Mere speculation about what may have happened does not allow a plausible inference when defendants present a facially valid record of assignment from Option One to Wells Fargo.  As a result, dismissal is warranted.").

For the same reasons, plaintiff's allegations regarding the alleged lack of authority by Miner to sign the Assignment of Mortgage from MERS to Chase or the Power of Attorney authorizing Shapiro & Zielke to foreclose, or the firm's lack of authority to sign the Notices of Pendency on behalf of Chase "do not hold up to even the slightest scrutiny."   Simmer, 2013 WL 6244710, at *3 (plaintiffs' allegations regarding individuals' alleged lack of authority to sign Notices of Pendency and Powers of Attorney failed because the allegations are "merely conclusory assertions without any factual allegations to support them."); Segura v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-531 (SRN/JJK), 2013 WL 3034096, *2 (D. Minn. June 17, 2013) (rejecting "contention that nearly every individual who signed a document in support of the foreclosure did not have the authority to do so" as "implausible and speculative, just the sort of 'vague claims' that have been rejected repeatedly by courts in this District and by the Eighth Circuit Court of Appeals.") (citing Mine v. Federal Home Loan Mortg. Corp., Civ. No. 13–220, 2013 WL 2443852, at *4 (D. Minn. June 5, 2013) (Montgomery, J.); Welk, 2013 WL 2155463, at *4 ("[Plaintiff] insists that the individual who signed the assignment to Wells Fargo and the individual who signed the power of attorney allowing Wells Fargo to institute foreclosure proceedings did not have the authority to do so, and that the law firm and Trisko knew that the individuals had no authority but proceeded with the foreclosure anyway. But there are no facts of any kind—no evidence pled supporting these allegations."); Stilp v. HSBC Bank USA, N.A., Civ. No. 12-3098 (ADM/JJK), 2013

WL 1175025, at *4 (D. Minn. Mar. 20, 2013), aff'd, 2013 WL 5340399, at *3 (8th Cir. Sept. 25, 2013) ("Plaintiffs plead upon information and belief that all individuals executing assignments of mortgage and power of attorney lack legal authority to do so. Plaintiffs believe the individuals executing assignments and POAs are employed by organizations other than the ones on whose behalf they have signed. . . . Even if the individuals do work for other organizations, it does not mean that they could not also work for or be hired as agents on behalf of different clients. Absent even an iota of evidence of fraud, these are conclusory allegations which do not state a claim for which relief may be granted.") (citations omitted); Jackson v. Mortgage Elec. Registration Sys., Inc., 770 N.W.2d 487, 491 (Minn. 2009) (recognizing that mortgage assignments are executed for MERS by bank representatives); Kaylor v. Bank of Am., N.A., Civ. No. 12-1586 (DSD/SER), 2012 WL 6217443, at *5 (D. Minn. Dec. 13, 2012) (finding that even if individual who effectuated the assignment of the mortgage did not have authority to do so, homeowners not a party to the mortgage assignment had no standing to challenge the assignment.).

Finally, even if the third party documents attached to plaintiff's Complaint did apply to plaintiff's mortgage and plaintiff's speculative statements about the lack of signing authority of Miner to execute the Assignment of Mortgage from MERS to Chase were true, plaintiff suffered no injury in fact as a result and, therefore lacks standing to pursue a quiet title claim on this basis.[5]   See Walker v. Bank of Am., N.A., Civ. No. 11-783 (ADM/JSM), 2013 WL 5771154 at *5 (D. Minn. Oct. 24, 2013) ("As has been

---

[5]     Defendants did not raise standing.   Nevertheless, "[c]ourts are 'obligated to examine standing sua sponte where standing has erroneously been assumed. . . .'" Meuir v. Greene County Jail Employees, 487 F.3d 1115, 1119 (8th Cir. 2007) (quoting Adarand Const., Inc. v. Mineta, 534 U.S. 103, 109 (2001)).

repeatedly held in this district, mortgagors lack standing to challenge the validity of a subsequent assignment of mortgage."); <u>Novak</u>, 2012 WL 3638513, at *6 ("plaintiffs lack standing to challenge the assignment: they are not parties to the assignment and any dispute would be between the assignor and assignee"); <u>Quale</u>, 2013 WL 3166584, at *1 ("Insofar as the Quales based their claims on the allegations that an individual lacked authority to execute the assignment of mortgage, the Court rejects this argument because the Quales lack standing to make such a challenge, and even if they did have standing, their claims are fatally implausible and speculative."); <u>Lara</u>, 2013 WL 3088728, at *3 ("Plaintiffs' reliance on the Seller/Servicer Guides or Fannie Mae's Custodial Agreement is similarly unavailing.  The Guide is, at best, a contract between Fannie Mae and its servicers. It is not for the benefit of Plaintiffs and imposes no duties on any entity vis-a-vis the borrower. The Custodial Agreement, too, is not for the benefit of any borrower, but is an agreement between Fannie Mae and unknown entities. Even if Wells Fargo was a party to either of these documents and breached its obligations under the documents, that failure would be for Fannie Mae, not Plaintiffs, to prosecute."); <u>Segura</u>, 2013 WL 3034096, *3 (D. Minn. June 17, 2013) ("Nor does the Seguras' reliance on the Seller/Servicer Guides or Fannie Mae's Custodial Agreement make their allegation less speculative. The Guide is, at best, a contract between Fannie Mae and its servicers.  It is not for the benefit of the Seguras and imposes no duties on any entity vis-a-vis the borrower.  The Custodial Agreement, too, is not for the benefit of any borrower, but is an agreement between Fannie Mae and unknown entities. Even if Wells Fargo was a party to either of these documents and breached its obligations under the documents, that failure would be for Fannie Mae, not the Seguras, to

prosecute."); Welk, 2013 WL 2155463, at *3 ("[the] 'Guide' about which the Amended

Complaint makes much hay is, at best, a contract between Fannie Mae and its

servicers. It is not for the benefit of [plaintiff] and imposes no duties on any entity vis-a-

vis the borrower. So even if Wells Fargo failed to comply with its purported obligations

under the 'Guide,' such a failure would be for Fannie Mae, not [plaintiff], to prosecute.");

Forseth v. Bank of Am., N.A., Civil No. 13-38 (SRN/TNL), 2013 WL 2297036, at *5 (D.

Minn. May 24, 2013) ("The allegations regarding unauthorized signatures on every

document related to the foreclosure process for the Forseths' mortgage are similarly

implausible and pure speculation.  But even if the signatures were unauthorized, the

harm caused by the lack of signing authority is harm to MERS or BAC, in the case of

Mr. Bruns, or BAC/Bank of America or Fannie Mae in the case of Mr. McDaniel and Ms.

Girvan. There is no allegation in the Amended Complaint that any of these individuals

falsely initiated foreclosure proceedings against the Forseths' property, and the

documents in the public records belie such a claim in any event. The Forseths defaulted

on their mortgage by not making payments as they promised. Even if all three of these

individuals lacked signing authority, as the Forseths claim, they have suffered no injury

as a result and therefore have no standing to pursue their claims.") (citations omitted);

Sovis v. Bank of New York Mellon, Civ. No. 11-2253 (DWF/LIB), 2012 WL 733758, at

*4-5 (D. Minn. Mar. 6, 2012) (finding that general allegations that defendants unlawfully

foreclosed on plaintiff's home pursuant to a series of invalid assignments of mortgage,

"cannot furnish the causal nexus necessary to establish standing to assert her claims.");

Gerlich v. Countrywide Home Loans, Inc., Civ. No. 10-4520 (DWF/LIB), 2011 WL

3920235, at *2 (D. Minn. Sept. 7, 2011) (borrower lacks standing to challenge

assignment of mortgage)); <u>Kebasso v. BAC Home Loans Servicing, LP</u>, 813 F. Supp.2d 1104, 1113 (D. Minn. 2011) (finding that mortgagors, lacked standing to challenge the defendants' authority to foreclose, as "'any disputes that arise between the mortgagee holding legal title and the assignee of the promissory note holding equitable title do not affect the status of the mortgagor for purposes of foreclosure by advertisement.' The court reaffirmed the principle that 'legal and equitable title can be separated' and if a dispute arises between the holder of legal and equitable title with respect to foreclosure, '[i]t is a matter between them alone, and does not concern the mortgagor,' and such a transaction does "not affect the interests of the mortgagor, and he could not object."") (quoting <u>Jackson</u>, 770 N.W.2d at 500).

For all of these reasons, plaintiff's claims in Count I, which rest on bald assertions of an unrecorded assignment from MERS to Fannie Mae and the purported lack of signing authority by Miner to execute the assignment of the mortgage from MERS to Chase, must be dismissed.

**B.   <u>Slander of Title</u>**

To state a claim for slander of title, a plaintiff must allege facts that show: (1) there was a false statement concerning the real property owned by the plaintiff; (2) the false statement was published to others; (3) the false statement was published maliciously; and (4) the publication of the false statement concerning title to the property caused the plaintiff pecuniary loss in the form of special damages.  <u>Paidar v. Hughes</u>, 615 N.W.2d 276, 279–80 (Minn. 2000) (citation omitted).  To plead malice, plaintiff "must raise factual allegations sufficient to create a plausible claim that at least one of the [  ] parties acted with a reckless disregard for the truth, 'despite a high degree of

awareness of probable falsity.'" Dunbar, 709 F.3d at 1258 (quoting Brickner v. One Land Dev. Co., 742 N.W.2d 706, 711 (Minn. Ct. App. 2007)); see also Quevli Farms, Inc. v. Union Sav. Bank & Trust Co., 178 Minn. 27, 226 N.W. 191, 192 (Minn. 1929) (concluding that to be a malicious statement, it must be a "groundless disparagement of the plaintiff's title or property . . . made without probable cause."). The filing of an instrument known to be inoperative is a false statement that, if done maliciously, constitutes slander of title. Kelly v. First State Bank of Rothsay, 177 N.W. 347, 347 (Minn. 1920). Additionally, plaintiff must establish that he relied on the alleged false statement. See Welk, 850 F.Supp.2d at 993-94.

The Court finds the slander of title claim must be dismissed because plaintiff has alleged no facts from which this Court could infer that defendants made a false statement, acted maliciously or that plaintiff suffered any pecuniary loss from a publication concerning title to her property. See Ko, 2013 WL 4052680, at *4 (dismissing similarly-pled slander of title claim). Significantly, plaintiff's only response to defendants' argument in favor of dismissal of this Court was to repeat the allegations in the Complaint and to state that Chase commenced a foreclosure without recording a mortgage assignment to Fannie Mae. Pl. Opp. Mem., p. 24. As this Court previously stated, there is no colorable evidence stated in the Complaint of an unrecorded assignment. Therefore, plaintiff failed to state a claim for slander of title, and dismissal is required.[6]

---

[6] The Court notes that a slander of tile claim is subject to the heightened pleading standard of Fed. R. Civ. P. 9(b). See Murphy v. Aurora Loan Servs., LLC, 699 F.3d 1027, 1032 (8th Cir. 2012) (Rule 9(b) applies to slander of title claims); See also Ko, 2013 WL 3088728, at *4; Pope v. Fed Home Loan Mortg. Corp., Civ. No. 12-3094, 2013 WL 2251001, at *4 (D. Minn. May 22, 2013); Haubrich v. U.S. Bank Nat'l Ass'n, Civ. No.

### C.    Forcible Eviction

Plaintiff did not address defendants' arguments regarding dismissal of her forcible eviction claim in her opposition brief.  Therefore, the Court treated plaintiff's lack of opposition as a concession that the claim must be dismissed.  Gharwal, 2013 WL 4838904, at *1, n. 2 (dismissing slander of title claim for failure to respond to defendants' arguments in favor of dismissal); Mark v. Ault, 498 F.3d 775, 786 (8th Cir. 2007) (holding that failure to raise or address an issue constitutes abandonment) (citation omitted).

However, even if plaintiff had not waived her right to defend her forcible eviction claim, the Court finds the claim must be dismissed because plaintiff has alleged no facts to support this claim.  Minnesota Stat. §557.08 provides that a "person who is put out of real property in a forcible manner without lawful authority" is entitled to treble damages.  None of plaintiff's allegations regarding Chase's authority to foreclose on her mortgage survive scrutiny under Rule 12(b)(6) and Rule 8.  Therefore, any claim that an eviction was "unlawful" fails.   In any event, plaintiff's allegation that she was "personally in possession of the real property," (Complaint, ¶52), is wholly inconsistent with her claim to have been forcibly evicted from the property.  Plaintiff has failed to state a claim for forcible eviction and that claim must be dismissed.

### E.    Declaratory Judgment

A declaratory judgment is a remedy, not a cause of action.  See, e.g., Onvoy, Inc. v. ALLETE, Inc., 736 N.W.2d 611, 617–618 (Minn. 2007) (a declaratory judgment action

---

12-565 (DSD/TNL), 2012 WL 3612023, at *6 (D. Minn. Aug. 21, 2012), aff'd, 720 F.3d 979 (8th Cir. 2013).  Defendants did not argue in favor of dismissal based on plaintiff's failure to meet this standard.  Suffice it to say, however, having failed to plead any facts to support a slander of title claim, the claim also fails to meet the Rule 9(b) standard.

may be maintained only where there is a justiciable controversy); <u>Buck v. Am. Airlines, Inc.</u>, 476 F.3d 29, 33 n.3 (1st Cir. 2007) (noting that the Declaratory Judgment Act, 28 U.S.C. § 2201 "creates a remedy, not a cause of action").   In light of the Court's conclusion that plaintiff's substantive claims must be dismissed under Rule 12(b)(6), "[he is] left with a remedy in search of right."  <u>Scanlon v. Northwest Mortg., Inc.</u>, Civ. No. 11-3128 (MJD/TNL), 2012 WL 2885131, at *7 (D. Minn. July 13, 2012).  <u>See</u> <u>also</u> <u>Lara</u>, 2013 WL 3088728, at *3 (finding that where plaintiff had failed to state a substantive claim, the Amended Complaint also failed to state a claim for declaratory judgment) (citing <u>Weavewood, Inc. v. S & P Home Invs., LLC</u>, 821 N.W.2d 576, [579] (Minn. 2012) ("A declaratory judgment is a procedural device through which a party's existing legal rights may be vindicated so long as a justiciable controversy exists.")).

Plaintiff's claim for declaratory judgment must be dismissed because there is no legal basis for affording the remedy.[7]

For all of these reasons, this Court recommends that plaintiff's suit be dismissed with prejudice.[8]

---

[7]   Plaintiff conceded that the Court "is without power to render declaratory judgment unless there is a justiciable controversy."  Pl. Opp. Mem., p. 23 (citing <u>St. Paul Area Chamber of Commerce v. Marzitelli</u>, 258 N.W.2d 585, 587 (Minn. 1977)).

[8]   "Ordinarily dismissal of a [pleading] for failure to comply with Rule 8 should be with leave to amend."  <u>Michaelis v. Neb. State Bar Ass'n</u>, 717 F.2d 437, 438-39 (8th Cir. 1983).   Nonetheless, when a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate.  That is the case here.  <u>See</u> <u>McLean v. United States</u>, 566 F.3d 391, 400 (4th Cir. 2009) ("to the extent . . . that a district court is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief, the district court would err in designating [a] dismissal to be without prejudice.  Courts, including this one, have held that when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend."); <u>McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc.</u>, 339 F.3d 1087, 1096 (9th Cir. 2003) (dismissal

### III.    RECOMMENDATION

For the reasons set forth above, it is recommended that:

(1)    Defendants' Motion to Dismiss [Docket No. 7] be **GRANTED.**

(2)    This matter be dismissed with prejudice.

Dated: December19, 2013                     *Janie S. Mayeron*
                                            JANIE S. MAYERON
                                            United States Magistrate Judge

### <u>NOTICE</u>

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **January 2, 2014**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

---

with prejudice is appropriate where "deficiencies in [plaintiff's] claims cannot be cured by amendment"); <u>Cato v. United States</u>, 70 F.3d 1103, 1106 (9th Cir. 1995) (a <u>pro</u> <u>se</u> litigant should be given chance to amend complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment."); <u>Ikechi v. Verizon Wireless</u>, Civ. No. 10-4554 (JNE/SER), 2011 WL 2118797, at *5, n. 6 (D. Minn. April 7, 2011) (recommending dismissal with prejudice of plaintiff's fraud claims because it was unlikely that plaintiff could cure the defective pleading on re-pleading), 2011 WL 2118791, at *3 (D. Minn. May 25, 2011) (adopting the Report and Recommendation of Magistrate Judge Rau regarding dismissal of plaintiff's fraud claims for failure to satisfy the particularity requirement of Rule 9(b)).